**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

CALLIDUS CAPITAL CORPORATION,

        Plaintiff,

                                       Case No. _____

v.

                                       Hon. _____

HARVEY INDUSTRIES LLC,
HARVEY PROPERTY MANAGEMENT LLC,
and G. JEROME HARVEY,

        Defendants.

_____/

## COMPLAINT

        Plaintiff Callidus Capital Corporation ("**Callidus**"), by its attorneys, Dickinson Wright PLLC, states as follows for its Complaint against Defendants Harvey Industries LLC, Harvey Property Management LLC (collectively, at times, the "**Company**"), and Defendant G. Jerome Harvey (collectively with the Company, "**Defendants**"):

## PARTIES, JURISDICTION AND VENUE

        1.     Callidus is an Ontario corporation with its principal place of business in Ontario, Canada.  Callidus is a publicly traded, specialty debt fund that lends to companies across Canada and the United States.

        2.     Harvey Industries LLC ("**Harvey Industries**") is a Michigan limited liability company with its principal place of business in Livonia, Michigan.

        3.     Harvey Property Management LLC ("**Harvey Property**") is a Michigan limited liability company with its principal place of business in Livonia, Michigan.

4.      Upon information and belief, Mr. Harvey is the sole, majority or managing member/shareholder of each of the other Defendants, is the President and CEO of each of the other Defendants, and is a resident of the State of Michigan.

5.      Jurisdiction is proper in this Court pursuant to 28 U.S.C. § 1332(a) because the amount in controversy exceeds $75,000.00 (exclusive of interest, costs and attorney fees) and complete diversity exists between Plaintiff and Defendants.

6.      Venue is proper in the Eastern District of Michigan pursuant to 28 U.S.C. § 1391(b).

## GENERAL ALLEGATIONS

### The Company and Its Relationship With Callidus

7.      The Company has operated collectively as a high quality aluminum casting, machining, assembly, testing and producer to the automotive industry since 2007.

8.      The Company currently operates one plant, located in Wabash, Indiana (the "**Wabash Plant**").[1]   The largest customer of the Wabash Plant is Tesla Motors, Inc. ("**Tesla**"). The Wabash Plant currently employs 108 employees.

9.      By November of 2012, the Company's financial condition was deteriorating.  In an effort to try to turn around and save the Company, Defendants asked Callidus to refinance existing loans and provide bridge financing to the Company.

10.      Beginning on November 7, 2012, pursuant to certain Loan Documents (as defined and detailed below), Callidus extended several commercial loans to the Company in the aggregate principal amount of $41,544,000, which are secured by the various property described therein.

---

[1]      Affiliated companies of the Company previously operated other plants including in Aiken, South Carolina and Nuevo Laredo, Mexico, both of which are now shut down.

2

11.     Harvey Property, the owner of the Wabash Plant and related real property, executed and delivered to Callidus a Continuing Collateral Mortgage, Security Agreement, Assignment of Leases and Rents, And Financing Statement (Indiana) dated November 7, 2012, as amended by Amendment to Continuing Collateral Mortgage, Security Agreement, Assignment of Leases and Rents and Fixture Filing dated May 30, 2013 (collectively, as amended from time to time, the "**Wabash Mortgage**"), granting Callidus a mortgage upon the Wabash Plant and related real property.   The Wabash Mortgage was duly recorded by the Wabash County Recorder and secures payment and performance of the Company's obligations under the Loan Documents.   A true and accurate copy of the duly recorded Wabash Mortgage is attached as **Exhibit 1**.

12.     Mr. Harvey also personally guaranteed payment and performance of the Company's obligations up to a specified amount under the Loan Documents as further detailed below.

**The Company's Financial Decline, Callidus' Forbearance and Defendants' Defaults**

13.     Defendants were not able to turn the Company around and the Company's financial condition continued to decline.

14.     At the Company's request and to address the Company's deteriorating financial condition, commencing in December of 2013 Callidus executed a series of forbearance agreements extending the maturity date of the Callidus loans to December 31, 2014 (the "**Repayment Date**") and providing other financial accommodations to the Company.[2]

15.     The Company was unwilling or unable pay all amounts due to Callidus by the Repayment Date or in response to Callidus' subsequent demand for payment.   The foregoing failure constitutes a default under the Loan Documents.

---

[2] As part of this accommodation, certain of the Company's customers (General Motors LLC and Modine Manufacturing Company) provided additional financing through the purchase of subordinated participations in certain of the Secured Indebtedness (defined below).

16. Mr. Harvey has been unwilling or unable to honor his guaranty in response to Callidus' demand for payment, which also constitutes a default under the Loan Documents.

17. As detailed in the Forbearance Agreement (defined below), Defendants have acknowledged that they are in default under the Loan Documents for at least eighteen (18) other reasons. None of the identified defaults have been waived by Callidus, and all such defaults are continuing as of the date hereof.

18. As of February 13, 2015, the Company owed the following principal amounts under the Loan Documents:

   a. $$4,923,679.95 under Revolving Loan A

   b. $$357,375.00 under Revolving Loan B

   c. $$9,693,572.05 under Single Advance Loan C

   d. $$855,000.00 under Multiple Advance Loan D

   e. $$1,640,664.50 under Multiple Advance Loan E

   f. $$14,970,863.95 under Single Advance Loan F

   g. $$800,000 under Single Advance Loan G

   h. $$5,656,804.93 in accrued and unpaid PIK Interest

   **$38,897,960.38 = SUBTOTAL**

19. In addition to the above subtotal, the Company owes additional deferred fees, and interest, fees and costs (including Callidus' professional fees for this action), all of which continue to accrue pursuant to the Loan Documents (collectively with the above subtotal, the "**Secured Indebtedness**").

20.    Additionally, Callidus continues to make protective advances under Revolving Loan A to protect its secured interests in the Company, which continues to increase the Company's Secured Indebtedness to Callidus.

### Efforts to Preserve the Company's Remaining Value and the Need for a General Receiver

21.    In December of 2014, Defendants lost a significant amount of business at the Wabash Plant.  There is no hope for turning the Company around and the most prudent course of action for the Company, its shareholders, its employees, and its creditors (including Callidus) is to seek an orderly sale of the Company's remaining assets through a federal receivership, including sale of the Wabash Plant as a going concern.

22.    In an effort to preserve the Company's remaining value so that the Wabash Plant can continue to operate and be sold as a going concern, Callidus, Harvey Industries and Tesla (the Wabash Plant's largest customer) have reached an agreement pursuant to which Tesla will maintain its purchase orders with Harvey Industries so that the Wabash Plant can remain open and Callidus will provide continued financing.

23.     The agreement between Callidus, Harvey Industries and Tesla is conditioned upon appointment of a general receiver in this civil action and satisfactory sale of the Wabash Plant as a going concern.  If these conditions are not met, Tesla will terminate its purchase orders and the Wabash Plant will be forced to close.

24.    Similarly, Callidus is unwilling to continue to provide financial support to the Company without the appointment of a general receiver in this civil action.

25.    Without Callidus' continued financial support, Defendants do not have sufficient liquidity to operate the Wabash Plant, to prosecute and/or defend (as applicable) the collection

efforts relating to the Company's accounts receivable and payable, or to preserve and protect the Company's assets which constitute Callidus' collateral.

26.   The appointment of a general receiver is therefore necessary and proper to prevent waste, preserve and manage the Company and the going concern value of the Wabash Plant, and protect and preserve Callidus' collateral, pending the exercise of one or more of the remedies available to Callidus.

27.   In the absence of appointment of a general receiver, the Company's assets are in danger of immediate and irreparable damage, loss and waste, and neither Callidus nor Defendants will be able to maximize the value of the Company in a controlled and orderly fashion.

<u>**Summary of the Loan Documents and Callidus' Collateral**</u>

28.   The Loan Documents between Callidus and Defendants include, but are not necessarily limited to, the following (each of which is attached hereto and incorporated herein by reference):

    a.   Loan Agreement dated November 7, 2012, as amended by the First Amendment to Loan Agreement dated May 30, 2013 and Second Amendment to Loan Agreement dated August, 2013 (collectively, the "**<u>Loan Agreement</u>**", a true and accurate copy of which is attached as **Exhibit 2**);

    b.   Continuing Security Agreement dated November 7, 2012 (as amended from time to time, the "**<u>Security Agreement</u>**", a true and accurate copy of which is attached as **Exhibit 3**);

    c.   UCC-1 Statements filed with the Secretary of State of Michigan (a true and accurate copy of the duly recorded copy of which is attached as **Exhibit 4**);

d. The Wabash Mortgage, a true and accurate copy of the duly recorded copy of which is attached as Exhibit 1;

e. G. Jerome Harvey's Limited Guaranty dated November 7, 2012 (as amended from time to time, the "**Jerome Harvey Guaranty**", a true and accurate copy of which is attached as **Exhibit 5**);

f. Forbearance Agreement dated as of February 3, 2014 (as amended by the Amendment to Forbearance Agreement dated as of April 8, 2014 (collectively, the "**Forbearance Agreement**," a true and accurate copy of which is attached as **Exhibit 6**).

29.    Except as to limited purchase money security interests and statutory liens, Callidus holds a duly perfected first-priority security interest in substantially all of the Company's assets, including without limitation, (a) the Company's present and future  accounts, general intangibles, documents, instruments, chattel paper, inventory, equipment, fixtures, deposit accounts, investment property, and all products and proceeds thereof; and (b) the Wabash Plant (all property in which Callidus holds a security interest, collectively herein, the "**Collateral**").

## COUNT I – BREACH OF CONTRACT BY THE COMPANY

30.    Callidus incorporates by reference and restates all allegations above.

31.    The Loan Documents constitute binding and enforceable contracts between Callidus and the Company.

32.    The Company has breached the Loan Documents by, without limitation, failing to pay all Secured Indebtedness due to Callidus on the Repayment Date and in response to Callidus' subsequent demand for payment.  Defendants have also acknowledged that they have breached the Loan Documents for at least eighteen (18) other reasons.

33.   The Company's breach of the Loan Documents has damaged and will continue to damage Callidus.

WHEREFORE, Callidus requests that this Court award Callidus all sums due and owing by the Company, including interest, costs and attorneys' fees, and grant such further relief as the Court deems just and equitable.

## COUNT II – BREACH OF GUARANTY BY G. JEROME HARVEY

34.   Callidus incorporates by reference and restates all allegations above.

35.   The Jerome Harvey Guaranty constitutes a binding and enforceable contract between Callidus and Mr. Harvey.

36.   Mr. Harvey has breached the Jerome Harvey Guaranty by, without limitation, failing to pay all amounts due to Callidus under the Jerome Harvey Guaranty by the Repayment Date and in response to Callidus' subsequent demand for payment.

37.   Mr. Harvey's breach of the Jerome Harvey Guaranty has damaged and will continue to damage Callidus.

WHEREFORE, Callidus requests that this Court award Callidus all sums due and owing by Mr. Harvey under the Jerome Harvey Guaranty, including interest, costs and attorneys' fees, and grant such further relief as the Court deems just and equitable.

## COUNT III – APPOINTMENT OF GENERAL RECEIVER WITH AUTHORITY TO SELL COMPANY'S ASSETS FREE AND CLEAR OF LIENS, CLAIMS AND INTERESTS

38.   Callidus incorporates by reference and restates all allegations above.

39.   28 U.S.C. §§ 754, 959, 2001 and 2004, Federal Rule of Civil Procedure 66, and equity permit this Court to appoint a general receiver with broad powers to assume custody and control over all of the Company's assets, to operate the Wabash Plant, to market and sell the

Company's assets pursuant to 28 U.S.C. §§ 2001 and 2004, and to exercise all other powers set forth in the Verified Motion for Entry of Order for Receiver and the Order for Receiver to be filed hereafter.

40.   28 U.S.C. §§ 2001 and 2004 authorize a receiver to sell assets by public or private sale.

41.   Defendants consented to the appointment of a receiver following default pursuant to Sections 3.5(c) and 4.4 of the Wabash Mortgage.

42.   In the absence of appointment of a general receiver, Tesla will not maintain its purchase orders with the Wabash Plant, the Wabash Plant will be forced to close, and the opportunity to sell the Wabash Plant as a going concern (and retain jobs) will be lost.

43.   In the absence of appointment of a general receiver, the Collateral is in danger of immediate and irreparable damage or loss, and neither Callidus nor Defendants will be able to maximize the value of the Company and the Collateral in a controlled and orderly fashion.

44.   Callidus' interests in the Collateral will be irreparably harmed if a general receiver is not appointed to take control of and to manage the Company and the Collateral and operate the Wabash Facility.

45.   Callidus is a secured creditor of the Company and is entitled to the relief of appointment of a general receiver under 28 U.S.C. §§ 754, 959, 2001 and 2004, Federal Rule of Civil Procedure 66, and equity.

46.   Appointment of a receiver is proper and necessary in order to protect, preserve, maintain and maximize the value of the Company and the Collateral.

47. A general receiver should be appointed with the power to sell the Company's assets pursuant to 28 U.S.C. §§ 2001 and 2004 and to exercise those other powers specified in the Verified Motion for Entry of Order for Receiver and the proposed Order for Receiver.

WHEREFORE, Callidus requests that this Court appoint a general receiver as requested in the Verified Motion for Entry of Order for Receiver, grant the receiver broad powers including the power to assume custody and control over all of the Company's assets, to operate the Wabash Plant, to market and sell the Company's assets (subject to Callidus' right to credit bid) free and clear of liens, claims and interests (with such liens, claims and interests to transfer to the proceeds of sale for subsequent resolution by the Court of any priority or other inter-creditor disputes), and all other powers specified in the proposed Order for Receiver, and grant such further relief as the Court deems just and equitable.

## COUNT IV – ACTION TO FORECLOSE ON CALLIDUS' COLLATERAL

48. Callidus incorporates by reference and restates all allegations above.

49. As set forth above, Defendants have defaulted under the Loan Documents.

50. Pursuant to the Loan Documents, Callidus has a right to foreclose upon the Collateral in the event of the Company's default.

WHEREFORE, Callidus requests that this Court allow Callidus, as an alternative to sale by a general receiver pursuant to Count III, to foreclose upon the Collateral, to oversee and authorize such foreclosure process and sale, to enter all orders necessary to effectuate a prompt foreclosure of the Collateral and/or permit Callidus to exercise its other legal or equitable remedies as provided in the Loan Documents to recover all sums due and owing by Defendants, including interest, costs and attorneys' fees, and grant such further relief as the Court deems just and equitable.

Respectfully Submitted,

DICKINSON WRIGHT PLLC

By: /s/ Michael C. Hammer
Michael C. Hammer (P41705)
Doron Yitzchaki (P72044)
350 S. Main Street, Suite 300
Ann Arbor, MI 48104
(734) 623-7075
mhammer@dickinsonwright.com
dyitzchaki@dickinsonwright.com

*Attorneys for Callidus Capital Corporation*

Dated:  February 18, 2015

11