## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

CALLIDUS CAPITAL CORPORATION,

        Plaintiff,

v.

HARVEY INDUSTRIES LLC, et al.,

        Defendants.

Case No.  2:15-cv-10616-RHC-EAS

Hon. Robert H. Cleland

Hon. Magistrate Elizabeth A. Stafford

_____/

## STIPULATED ORDER FOR RECEIVER

THIS MATTER having come before the Court upon the Complaint (the "**Complaint**") of Plaintiff Callidus Capital Corporation  ("**Callidus**" or "**Lender**") and the Verified Motion for Entry of Stipulated Order for Receiver (the "**Motion**"); Lender, and Defendants Harvey Industries LLC and Harvey Property Management LLC (collectively, the "**Company**"), having stipulated to the relief set forth herein; the Court having read and considered the Complaint and the Motion, and it appearing that venue and jurisdiction are proper in this Court and the relief requested is necessary and proper, the Court makes the following findings of fact and conclusions of law:

## **Findings of Fact:**

A.    This Court has diversity jurisdiction over this matter and authority to appoint a receiver pursuant to the provisions of 28 U.S.C. §§ 754, 959, 2001, 2004, Federal Rule of Civil Procedure 66 and common law.

B.    The Defendants have defaulted under the terms of the Loan Documents (defined below) among Defendants and Lender, and Lender is entitled to bring this action for receivership.

C.    The Parties have stipulated to the appointment of Steven R. Wybo, the "**Receiver**" an employee of Conway Mackenzie Inc. ("**Conway**") as receiver over the Company's assets.

D.    Conway as Receiver and its proposed counsel, Brooks Wilkins Sharkey & Turco PLLC, whom Receiver intends to retain as legal counsel in this matter, are disinterested parties in this case.  Receiver has previously served as a consultant to the Company, but will not serve in that role upon appointment as Receiver and will remain independent as an officer of the Court, and both the Company and Lender have waived conflicts, if any, regarding the Receiver's prior engagement as a consultant to the Company.   Conway has prior receivership experience, and the Receiver is qualified and competent to act as receiver of the Company's assets.

### The Loan Documents

E.      On November 7, 2012, Lender and the Company entered into a Loan Agreement, as amended by the First Amendment to Loan Agreement dated May 30, 2013 and Second Amendment to Loan Agreement dated August, 2013, (collectively, the "**Loan Agreement**"), and related agreements and security documents, described in greater detail below and in the Complaint (collectively with all amendments, Forbearance Agreements and other documents related to the Loan Agreement, as each may have been amended from time to time, the "**Loan Documents**").  The Loan Documents evidence commercial loans made by Lender to the Company in the maximum principal amount of $41,544,000, plus the amount of any participations purchased by General Motors LLC and Modine Manufacturing Company pursuant to the Subordinated Participation Agreement dated February 3, 2014 (together with all accrued and unpaid interest, fees, costs and liabilities described therein, the "**Obligations**").

F.      The purpose of the Loan Agreement was to refinance the Company's then existing loans and provide working capital financing to the Company.

G.      To secure the payment and performance of the Obligations, the Company executed and delivered to Lender a Continuing Security Agreement dated November 7, 2012 (as amended from time to time, the "**Security Agreement**") by which the Company granted to Lender a first-priority lien in substantially all of the Company's assets including, among other things, the

Company's present and future accounts, general intangibles, documents, instruments, chattel paper, inventory, equipment, fixtures, deposit accounts, investment property, and all products and proceeds thereof (collectively, the "**Personal Property Collateral**").  Lender duly perfected its security interest in the Personal Property Collateral by filing applicable UCC-1 Statements with the Michigan Secretary of State.

H.     To further secure the payment and performance of the Obligations, Harvey Property Management, LLC (hereafter "**Harvey Property**") executed and delivered to Lender a Continuing Collateral Mortgage, Security Agreement, Assignment of Leases and Rents, And Financing Statement (Indiana) dated November 7, 2012, as amended by Amendment to Continuing Collateral Mortgage, Security Agreement, Assignment of Leases and Rents and Fixture Filing dated May 30, 2013 (collectively, as amended from time to time, the "**Wabash Mortgage**"), granting Lender a mortgage upon the manufacturing plant and real property of Harvey Property located in Wabash, Indiana (collectively with all Personal Property Collateral located in and related thereto, the "**Wabash Plant**").  The Wabash Mortgage was duly recorded by the Wabash County Recorder and secures payment of the Obligations.

I.     Except as to limited purchase money security interests and statutory liens,  pursuant to the Loan Documents Lender holds a duly perfected security interest in substantially all of the Company's assets, including, but not limited to,

4

current and future Personal Property Collateral and the Wabash Plant (collectively, the "**Collateral**").  Lender holds a first-priority security interest in the Collateral.

### Defaults and Acceleration

J.     Commencing in December, 2013, at the Company's request, Lender executed a series of forbearance agreements to extend the maturity date and provide other financial accommodations to the Company.    Pursuant to the forbearance agreements, the maturity date of the Obligations was extended to December 31, 2014.

K.     In December, 2014, Harvey Industries, LLC ("**Harvey Industries**") lost a significant amount of business at the Wabash Plant.

L.     The Obligations matured on December 31, 2014 (the "**Repayment Date**") and are now fully due and payable.

M.     The Company has defaulted on its Obligations to Lender by, without limitation, failing to pay all amounts due on the Repayment Date and pursuant to the subsequent demand for payment made by Lender.

N.     Lender has made demand for payment of the Obligations which has been and continues to be refused by the Company.

O.     As of February 13, 2015, the Company owed the following principal amounts under the Loan Documents:

> (i)     $4,923,679.95 under Revolving Loan A
>
> (ii)     $357,375.00 under Revolving Loan B

(iii)   $9,693,572.05 under Single Advance Loan C

(iv)   $855,000.00 under Multiple Advance Loan D

(v)    $1,640,664.50 under Multiple Advance Loan E

(vi)   $14,970,863.95 under Single Advance Loan F

(vii)  $800,000.00 under Single Advance Loan G

(viii) $5,656,804.93 in accrued and unpaid PIK Interest

**$38,897,960.38 = SUBTOTAL**

P.    In addition to the above subtotal, the Company owes additional deferred fees, and interest, fees and costs (including Lender's professional fees for this action), all of which continue to accrue pursuant to the Loan Documents.

Q.    Additionally, Lender continues to make protective advances under Revolving Loan A to protect its secured interests in the Company, which continues to increase the Company's Obligations to Lender.

**Need and Grounds for Appointment of a Receiver**

R.    The Company is in default under the Loan Documents and Lender is entitled to, without limitation, foreclose upon the Collateral.

S.    In an effort to preserve the Company's remaining value so that the Wabash Plant can continue to operate, maintain its remaining customers and be sold as a going concern, Lender and the Company have reached an agreement pursuant to which Lender will provide continued financing. The agreement is

conditioned upon appointment of a general receiver in this civil action and satisfactory sale of the Wabash Plant as a going concern.

T.      Without appointment of a receiver and continued funding by Lender, production for the Company's remaining customers cannot be maintained and the Wabash Plant will be forced to close.

U.      Without continued financial support from the Lender, the Company does not have sufficient liquidity to operate the Wabash Plant, or to (i) prosecute and defend (as applicable) the collection efforts relating to its accounts receivable and payable, and (ii) preserve and protect the Collateral. Lender is unwilling to continue to provide financial support to the Company without the appointment of a receiver as set forth in this Order.

V.      The appointment of a receiver is therefore necessary to preserve and manage the Company, and the going concern value of the Wabash Plant, to protect and preserve the other Collateral and avoid waste, pending the exercise of one or more of the remedies available to Lender.

W.      In the absence of appointment of a receiver, the Collateral is in danger of immediate and irreparable damage or loss, waste will occur and neither Lender nor Defendants will be able to maximize the value of the Company and the Collateral in a controlled, orderly fashion.

X.    Lender's interests in the Collateral will be irreparably harmed if a receiver is not appointed to take control of and to manage the Company and the Collateral and operate the Wabash Plant.

Y.    Lender is a secured creditor of the Company and is entitled to relief under Fed. R. Civ. Proc. 66 and equity.

Z.    The Court finds that the relief requested in the Motion is proper and necessary in order to protect, preserve, maintain and maximize the value of the Company and the Collateral.

### Conclusions of Law

AA.   The Court has jurisdiction over this matter, over the Company, and over all of the Collateral and venue is proper, pursuant to 28 U.S.C. § 1332 and 28 U.S.C. § 1391.

BB.   Lender has no adequate remedy at law to prevent potential irreparable harm and injury to its rights under the Loan Documents and with respect to the Collateral, and therefore, Lender is entitled to the relief requested in the Complaint and the Motion as hereinafter provided.

CC.   Adequate notice of the Motion and the relief requested by Lender has been given to all Defendants, and Defendants have stipulated to entry of this Order.

## Order of the Court

IT IS ACCORDINGLY HEREBY ORDERED, ADJUDGED, AND DECREED as follows:

1.      The Motion is hereby GRANTED, as provided herein.

2.      Effective on the date of this Order, Conway is appointed as receiver of and over all assets, tangible or intangible, real and personal, of or in the possession or control of the Company including, without limitation, all income, revenue, rents, proceeds and profits attributable to such assets wherever located (collectively herein, the "**Receivership Assets**")  The Receivership Assets specifically include, and the Receiver is specifically authorized, in furtherance of the duties created under the terms of this Order, to enter onto all premises of the Company, wherever located (the "**Premises**") to fully exercise the powers granted hereunder.

3.      The Receiver is authorized to maintain possession of the Receivership Assets until the earlier of (i) termination of the Receivership Estate as set forth herein, (ii) such right to possession is terminated after the transfer of title to the Receivership Assets to a purchaser or other transferee pursuant to a public or private sale, or  as otherwise permitted under this Order, or (iii) until further order of this Court, provided that possession of the Receivership Assets by the Receiver shall not in any event constitute the transfer of legal or equitable title to any of the Receivership Assets to the Receiver or Lender.

9

4.      Subject only to the rights and liens of Lender, in furtherance of the rights and duties of the Receiver set forth in this Order, and subject to the Budget (as defined below), the Receiver shall have all powers and rights to administer and manage the Receivership Estate (as defined below) and to assume custody and control over the Receivership Assets, including, but not limited to, the following property, whether or not such property constitutes Collateral:

(a)      The Wabash Plant;

(b)      All accounting systems and business records of the Company, including all documents, books, records, and computer files and all passwords needed to access information and all other records concerning the income and operation and management of the Wabash Plant and other Receivership Assets;

(c)      All accounts receivable, aged accounts listing, promissory notes, payment intangibles, instruments and other rights of the Company to receive the payment of money;

(d)      All claims and causes of action of any of the Company, including documents identifying and summarizing all pending litigation related to any of the Company or impacting the Receivership Assets (excluding this action);

(e)      All rights under all customer purchase orders, equipment leases and contracts, plant leases, leases for the Premises, and contracts, and any other existing leases and contracts related to any of the Receivership Assets and all documents related to the foregoing;

(f)      All employee payroll records, employee files, and employment applications;

(g)      A list of all vendors with primary contact information, including utilities and utility accounts and contracts;

10

(h)    All equipment, machinery, inventory, furniture, vehicles, and supplies;

(i)    All patents, trademarks, copyrights and other intellectual property and confidential trade secrets of the Company and all documents related thereto;

(j)    All technical manuals for all systems, machinery and equip together with operating procedures;

(k)    Permits, licenses and any other regulatory documents;

(l)    All insurance policies relating to the Receivership Assets;

(m)    All general intangibles, including customer lists relating to the Receivership Assets;

(n)    All marketing and advertising material;

(o)    All existing bank accounts, security deposits and security deposit accounts of the Company and all petty cash;

(p)    All tax refund claims, whether now in existence or hereinafter arising; and,

(q)    All records required to be kept under applicable safety and environmental laws, including, without limitation, any environmental studies, Federal or State correspondence or records, and such other records pertaining to the management of the Receivership Assets as may be reasonably requested by Receiver.

5.    The Receivership Assets and the rights of the Receiver under this Order shall form the "**Receivership Estate**".

6.    The Company and its officers, shareholders, directors, managers and employees shall immediately turn over possession, custody, and control of the Receivership Assets to the Receiver and shall cooperate fully with the Receiver as the Receiver performs the duties provided under this Order, and shall immediately

deliver to the Receiver all keys and/or passcodes necessary to access any of the Receivership Assets. The Company and its officers, shareholders, directors, managers and employees shall make available to the Receiver all books and records necessary or helpful to the Receiver in the performance of its duties under this Order. The Receiver may use and/or employ the Company's existing personnel and management to assist the Receiver in carrying out the Receiver's duties under this Order.

7. This appointment of the Receiver is for the purpose of taking possession of, managing as necessary, and marketing, selling, or otherwise disposing of the Receivership Assets, or any portion thereof (whether any such sale or disposition occurs as a going concern or otherwise), in a reasonable fashion so as to reasonably maximize the sale value of the Receivership Assets for the benefit of Lender and all other creditors of the Company.

8. The sale of the Wabash Plant shall be by sale pursuant to 28 U.S.C. § 2001 free and clear of all liens, claims and interests (with such liens, claims and interests to transfer to the proceeds of sale for subsequent resolution by the Court of any priority or other inter-creditor disputes), with such sale to be carried out in accordance with the timetables specified in 28 U.S.C. § 2002 (or in accordance with such other timetables as the Court may order), at which Lender, or Lender's assignee or designee, is entitled to credit bid up to the full amount of the Obligations. The sale of any remaining Collateral may also be conducted by one

or more other sales pursuant to 28 U.S.C. §§ 2001 and/or 2004 free and clear of all liens, claims and interests (with such liens, claims and interests to transfer to the proceeds of sale for subsequent resolution by the Court of any priority or other inter-creditor disputes) at which Lender, or Lender's assignee or designee, is entitled to credit bid up to the full amount of the Obligations.

9.     In the event that the Wabash Plant and/or other Collateral is not sold in the manner set forth in Paragraph 8 of this Order, the Receiver shall at any time or times thereafter requested by Lender, surrender the Collateral, in whole or in part, to Lender in the manner requested by Lender, and shall execute or cause to be executed such reasonable documentation as Lender requests to effectuate each such surrender.

10.     Alternatively, Lender retains the right, in the exercise of its sole discretion, to foreclose on some or all of the Collateral with or without this Court's involvement.

11.     The Receiver shall oversee and manage the operations of the Wabash Plant and the liquidation of the Receivership Assets in a manner that continues production at the Wabash Plant to the extent of, and subject to, available financial, physical and human resources, and that reasonably maximizes value to Lender and other creditors of the Company under the circumstances; provided, however, the Receiver may only make cash disbursements from Receivership Assets in accordance with the approved budget attached as **Exhibit A** (the "**Budget**"), plus

13

an additional 10%, both in the aggregate and with respect to any line item or category of expenses set forth in such Budget.  Regarding the professional fees set forth in the Budget, professional fees which are not expended in any given week will carry over from week to week.  The Budget may not be amended except with the consent of Lender.

12.     The Receiver shall continue to diligently prosecute the outstanding litigation for collection of accounts and shall otherwise diligently seek to collect all outstanding accounts in a manner that reasonably maximizes the benefit to Lender and other creditors under the circumstances. The Receiver shall not compromise such claims without the prior written consent of Lender, which shall not be unreasonably withheld.

13.     The Receiver may borrow funds on behalf of the Receivership Estate on the terms to be set forth in a Second Amendment to Forbearance Agreement (the "**Second Forbearance Agreement**") to be executed by the Company and Lender as it relates to the Company which shall become effective upon execution of the Second Forbearance Agreement and entry of this Order.  Repayment of all post-Receivership loans extended by Lender will be a first priority charge against the Receivership Assets subject only to the Receiver's charge to the extent the Receiver's fees and costs were incurred pursuant to the Budget.

14.     The Receiver shall promptly deposit all accounts and proceeds of Collateral into the current blocked account of the Company at Royal Bank of

14

Canada for application to the Obligations. The Receiver shall also comply with the reporting obligations of the Company set forth in the Loan Agreement.

15. The Receiver is granted the fullest powers, rights and protections of a receiver permitted under applicable law and in equity to perform the above duties and preserve, manage, secure, safeguard and sell the Receivership Assets. The Company and their officers, shareholders, directors, members, managers, employees, independent contractors and agents shall have neither possession nor control of, nor any right to the Receivership Assets, but shall have the right to convey the Company's title to and interests in the Receivership Assets only as directed by the Receiver. Without limiting the generality of the foregoing, and subject to the rights and liens of Lender, the Receiver is specifically authorized and empowered, as necessary in each case in the reasonable business judgment of the Receiver, to transfer title, sell and otherwise dispose of the Receivership Assets, and to maximize the value of the Receivership Assets, in all instances subject to the Budget and this Order, and in connection therewith to do the following:

(a) To manage the business and affairs of, and to make any and all business decisions for the Wabash Plant and the Company, independent of and without interference from the shareholders, members, owners, officers, directors and/or managers of the Company;

(b) To marshal, manage, control, take custody of, secure, supervise, maintain, operate, preserve and, to the extent feasible, make productive the Receivership Assets, including, without limitation, taking control of all tangible and intangible property necessary to operate any ongoing business of the Company at the Wabash Plant;

15

(c)     To make and effectuate any necessary or proper repairs, restorations, maintenance, replacements, alterations, additions, or improvements to the Receivership Assets as the Receiver may from time to time deem appropriate and advisable;

(d)     To select, hire, fix the compensation of, discharge, and direct the activities of all employees, managers, contractors and other personnel of the Company;

(e)     To contract as necessary with providers of equipment, supplies, and services to the Company, and to negotiate with creditors and suppliers with respect to all things relating to the Company, including, without limitation, the terms and conditions of any ongoing contractual relationships and the terms and timing of any payments to creditors or suppliers, as dictated by the exigencies of the situation;

(f)     To retain Brooks Wilkins Sharkey & Turco PLLC as counsel in these proceedings, and any additional counsel with notice to the Company and Lender, and approval of the Court, as the Receiver may from time to time deem necessary, to handle particular issues that may arise during the course of his administration of the Receivership Estate, including the prosecution of claims to collect accounts;

(g)     To enforce, sue, defend, compromise, and settle all claims of any nature as to the Receivership Assets, provided Receiver shall not settle a claim relating to or constituting Collateral without Lender's prior written consent;

(h)     To insure or reinsure the Receivership Assets;

(i)     To exercise all rights, powers and incidents of ownership over the Receivership Assets that the Company would ordinarily have, including, without limitation, the right to collect and compromise accounts receivable of the Company on such terms and conditions as the Receiver may from time to time reasonably determine with consent of Lender;

(j)     To deal with appropriate Federal, State, and local governmental authorities on behalf of the Company;

(k)     To purchase and pay for all materials, supplies, and services reasonably determined by the Receiver to be necessary in the operation of the Wabash Plant and the administration of the Receivership Assets, solely in accordance with the Budget;

16

(l)     To incur and pay expenses incurred, in connection with the performance of the undertakings of the Receiver under this Order, solely in accordance with the Budget;

(m)     To pay and enter into agreements with respect to taxes and any required payments in lieu of taxes on the Receivership Assets as funds are available and as they come due, and to challenge the validity, enforcement and amount of same, including any assessment or claim of taxes due by the Company;

(n)     Subject to Paragraph 14, to take possession of and receive from all depositories, banks, brokerages, and otherwise, any money on deposit in such institutions belonging to the Company or arising from the operation of the Receivership Assets, whether such funds be in accounts titled in the name of the Company or otherwise;

(o)     To employ, retain, supervise, and terminate such agents, consultants, representatives, and employees (including without limitation accountants, investment bankers and auctioneers) as are necessary, after consultation with Lender, to market, sell or otherwise dispose of some or all of the Receivership Assets;

(p)     Subject to Paragraphs 8 through 10, to market, sell or otherwise dispose of some or all of the Receivership Assets, including, without limitation, by surrendering possession of such Receivership Assets to the Lender or such other party determined by the Receiver and Lender to hold a senior perfected security interest in such Assets, provided that any sale of the Receivership Assets shall be subject to further order of this Court;

(q)     To enter into letters of intent, asset purchase agreements and similar agreements and execute bills of sale in connection with the sale of some or all of the Receivership Assets, provided that any of the foregoing relating to Receivership Assets that are subject to a lien and security interest of Lender shall be upon the consent of Lender;

(r)     To collect and receive all income, earnings, revenues, rents, profits, and other monies which may arise from the operation, sale, lease, or other use of the Receivership Assets;

(s)     To negotiate and enter into any other contracts and/or agreements on behalf of the Company; and to honor or terminate existing leases and contracts (including, without limitation, leases and contracts relating to (i) the operation and/or management of the Receivership Assets

and (ii) any other contract or lease in any way relating to the Company), and to enter into new and additional contracts for goods and services required in connection with the Receivership Estate; and, provided further that the Receiver is not authorized to pay debts incurred without the Receiver's authorization or incurred prior to the Receiver's appointment unless and only to the extent that the Receiver has reasonably determined that nonpayment of such debts would be detrimental to the Receivership Estate and  (A) the payment of any such debt is included in the Budget, or (B) funds sufficient to pay such expenses have been specifically advanced to the Receiver for such purposes by Lender;

(t)     To present for payment any check, money order, credit card account or other forms of payment made payable to the Company or its agents or assigns which constitute rent, income, profits or receivables of any kind, endorse same in the name of the Receivership Estate, and collect the proceeds to be deposited into the Blocked Account in accordance with the terms and conditions of this Order;

(u)     To prepare and file any workers' compensation reports or tax returns stemming from the operation of the Receivership Estate as may be required by law, provided, however, that the Receiver shall not be responsible for the preparation and filing of any tax returns for the Company or any affiliates (including income, personal property, commercial activity, gross receipts, sales and use, or other tax returns) other than to provide the Company with information in the Receiver's possession that may be necessary for the Company or their affiliates to prepare and file their returns, and provided further that the Company shall provide to the Receiver any information needed to file any tax returns for the Receivership Estate or the Receivership Assets;

(v)     To issue subpoenas as the Receiver deems necessary to determine any and all parties asserting any rights to the Receivership Assets; and

(w)     To abandon or surrender to Lender (or other secured party having a first priority lien in the Receivership Asset), any Receivership Asset that, in the exercise of the Receiver's business judgment, is burdensome to the Receivership Estate, following at least five (5) business days written notice to Lender.

18

16.     The Receiver is authorized to take any and all actions not specifically enumerated herein which are necessary and proper to sell, lease, license, encumber, collect, compromise or otherwise liquidate the Receivership Assets. Notwithstanding anything to the contrary in this Order, the Receiver is not authorized to do such things without the prior express consent of Lender, which consent may be conditioned upon Lender's agreement as to the timing, method and manner, and terms of sale, lease, encumbrance, compromise or other disposition of the Collateral.

17.     The Receiver shall occupy the position of the Company with respect to the Loan Documents.  The Receiver may request and receive additional advances from Lender under Revolving Loan A for use by the Receiver to pay expenses incurred in connection with the performance of the Receiver's duties hereunder in accordance with the Budget and the Second Forbearance Agreement, but nothing in this Order or otherwise shall be construed as a commitment, agreement or undertaking of any kind by Lender to make any such advance, or be construed as an Order of the Court mandating Lender to make any such advance, and any such advance made by Lender shall be in the sole and absolute discretion of Lender on such terms and conditions as it may require, including, without limitation, the condition that any such advance be utilized solely and exclusively for payment of Receivership Expenses agreed by Lender to be attributable to the preservation and/or disposition of the Collateral.  The existing Obligations and any

additional advances made by Lender to the Receiver under the Second Forbearance Agreement, the Loan Documents and this Order shall be subject to Lender's rights under the Loan Documents, including Lender's security interests created under the Loan Documents, and any such advances shall be considered additional indebtedness under the Loan Documents, without the need for additional action on the part of Lender of any kind.   The Receiver shall have the authority to contractually agree with Lender to amend the terms and conditions of the Loan Documents, as the Receiver may reasonably determine, in order further the purposes of the Receivership Estate.   Nothing in this Order shall require the Receiver to advance funds for any purpose if the Receiver does not have such funds.

18.    Neither the Receiver nor Lender shall be liable for any expenses or accounts payable of any kind or nature, including, without limitation, unpaid payroll obligations, employee benefits or related payroll tax obligations, arising on account of or with respect to any of the Receivership Assets and which were incurred prior to the Receiver's taking possession of the Receivership Assets, and, subject to the terms hereof setting forth the powers of the Receiver, neither the Receiver nor Lender shall be required to use any income collected after the Receiver takes possession of the Receivership Assets for payment of any such expenses or accounts payable with regard to the Receivership Assets incurred prior to the Receiver's taking possession of the Receivership Assets.

20

19.     The Receiver, (which, for purposes of this paragraph, shall include his employees, agents, and professionals that he may retain to assist him with the performance of his duties, and others engaged in connection therewith while lawfully acting as such), is deemed an agent of the Court and is entitled to and shall have immunity to the fullest extent of the law.  The Receiver shall not ever be liable for any act or failure to act or for any loss sustained through any error of judgment unless it results from the Receiver's own intentional or gross misconduct. The determination of the Receiver's intentional or gross misconduct must be established by clear and convincing evidence.  The Receiver's reasonable exercise or non-exercise of powers and discretion in accordance with the terms of this Order shall be conclusive on all persons.  In addition, notwithstanding any provisions of this Order, the Receiver shall not at any time be liable personally for any debt owing to Lender, or for any claim, obligation, liability, action, cost or expense of the Company to any person or entity (including, without limitation, any environmental claims, liabilities, obligations, or liens, and any amounts owed to any of the Company's creditors because of the duties imposed upon the Receiver hereunder) whether arising out of or related to events occurring prior to or after the commencement of the Receivership Estate or otherwise.  Except as may otherwise be expressly set forth herein, nothing in this Order shall grant any additional rights to trade creditors or general unsecured creditors of the Company, whose claims are solely against the Company.  Such trade creditors' and general unsecured creditors'

rights shall be solely determined in accordance with state law applicable to such claims. Any execution of documents made by the Receiver pursuant to the powers and rights conveyed by this Order shall be construed as having been made by the Receiver solely and exclusively in his capacity as Receiver, and not as an actual party to this action or to any such agreement or writing.

20.    The Receiver shall be obligated to post a bond in the amount of $10,000.00. The Receiver's duty to act as receiver is subject to the terms of this Order, as it may be amended, supplemented or modified from time to time. The Company shall cooperate with the Receiver to add the Receiver as an additional insured under all policies of insurance.

21.    The Receiver shall maintain possession, custody, and control of the Receivership Assets until they are sold, surrendered to Lender or otherwise disposed of in accordance with this Order, and the proceeds distributed pursuant to Order of the Court, subject at all times to the authorization of the Receiver to manage the Receivership Assets, borrow funds under the Loan Agreement, and expend monies comprising the Receivership Assets in accordance with the terms and conditions set forth in this Order and the Budget.

22.    The Receiver shall have the responsibility of keeping the Receivership Assets insured and may at the Receiver's option keep in force any existing insurance coverage or obtain new coverage for the Receivership Assets, which shall include the naming of the Receiver as an additional insured on the policy.

The Company shall promptly provide the Receiver with copies of all such insurance policies and related documents.

23.     The authority granted to the Receiver by this Order is self-executing. The Receiver is authorized to act on behalf of the Company in the Receiver's own name and/or in the name of the Company, as the Receiver deems appropriate, without further Order of this Court.

24.     Any party to this case may at any time apply to this Court by motion with notice to all attorneys of record for further or other instructions or for further powers necessary to enable the Receiver to perform the Receiver's duties properly.

25.     The Receiver and any professionals, agents and employees engaged by the Receiver, and the professionals of the Company, shall be compensated weekly in accordance with the terms of the Budget, and the Receiver is authorized to pay the fees and expenses incurred by the Receiver for professional services in accordance with the Budget and the terms of any underlying engagement, including a $50,000 retainer for his counsel and the fees and expenses incurred in connection with preparing for the receivership.  The Receiver shall file with the Court financial reports (including, without limitation, an income and expense statement, a statement of receipts and disbursements, a balance sheet, and a cash flow analysis) monthly, not later than the 30th day of each succeeding month, commencing March 31, 2015 (for the February 2015 report), and shall serve a copy upon counsel for Lender and counsel for the Company.  That portion of the

expenses comprising the Receiver's fees and out-of-pocket expenses (including without limitation, the fees and expenses incurred by the Receiver for professional services) shall be an expense of administration of the Receivership Estate and shall be a first charge and lien against all assets of the Receivership Assets and against any proceeds realized by the sale of any Receivership Assets, subject always to the terms and conditions of this Order and the Budget.

26.     The Receivership Estate shall continue until the Receiver has been discharged as set forth herein. The Receiver may resign upon thirty (30) days' notice to Lender, the Company's counsel and this Court and the entry of the further Order of this Court.  The Receiver shall be removed either (i) automatically, 30 days after filing of a written demand for removal signed by Lender's counsel and filed with the Court; or (ii) in the Court's equitable discretion for cause shown.  If Receiver is removed, a successor receiver may be appointed on an expedited basis by motion filed by Lender requesting the appointment of a successor receiver.  If the Receiver is removed or resigns, the Receiver's final account shall be filed within 30 days of the removal or resignation of Receiver.

27.     At such time as the Receiver has either (a) sold all of the Receivership Assets, and/or (b) surrendered possession of the Receivership Assets in accordance with this Order, or at such other time as the Court may determine and direct upon appropriate motion by any party in interest, and upon the giving of notice and the

approval by this Court of a final account of the Receiver's duties hereunder, the Receiver shall be released and discharged from further obligations hereunder.

28.     This Order operates as a stay (the "**Stay**") of (a) the commencement or continuation, including the issuance or employment of process, of a judicial, administrative, or other action or proceeding against the Defendants or the Receivership Assets to recover a claim or which would in any way transfer title to, encumber title to, or operate as a lien against the Receivership Assets or to recover upon a claim against the Company via execution against or levy upon the Receivership Assets wherever located; (b) the enforcement against the Receivership Assets of any judgment obtained before the date of this Order; (c) any act by any person or entity to obtain possession of the Receivership Assets or to exercise control of the Receivership Assets, including but not limited to judgment debtor examinations, garnishments and orders to seize property; (d) any act to create, perfect or enforce any lien against the Receivership Assets; (e) any act to create, perfect, or enforce against the Receivership Assets any lien to the extent that such lien secures a claim that arose before the date of this Order; and/or (f) any act of interference with the Receiver's management and control of the Receivership Assets.  The Stay shall not operate to preclude the filing of any continuation statements or any other action to continue the perfection of any lien against the Receivership Assets or the filing or participation in any involuntary bankruptcy petition with respect to the Company.  The Receiver is specifically

25

authorized, in the exercise of the Receiver's discretion, to commence a proceeding under title 11 of the United States Code, if the Receiver determines such action to be in the best interests of the Receivership Estate.

29.   Upon the entry of this Order, the Company, its agents, officers, directors, shareholders and/or employees, and all of Company's creditors and their respective attorneys, servants, agents, and employees, and all other persons, firms and corporations with interests of any kind in or with respect to the Receivership Assets, and all other persons and entities receiving actual notice of this Order, unless otherwise expressly authorized in writing by the Receiver, or further ordered by this Court, shall refrain from taking any action prohibited by the stay provided herein.  The Receiver shall promptly serve a copy of this entered Order upon all known creditors of the Company.

30.   Notwithstanding the stay provisions of this Order, or the right of the Receiver to be in possession of the Premises, Lender shall be permitted from time to time to effectuate the rights and remedies provided to Lender under the Loan Documents and the Uniform Commercial Code with respect to any property not comprising Receivership Assets, or any property comprising Receivership Assets which is from time to time surrendered to Lender by the Receiver in accordance with the terms and conditions of this Order.

31.   This Court retains jurisdiction to modify the terms of this Order and to expand or contract the rights, duties and obligations of the Receiver, and to enter

such other Orders as it may deem necessary, just, and proper, from time to time during the pendency of this action.

32.     Nothing contained in this Order shall alter, modify, subordinate, or impair any existing rights, interests or remedies of Plaintiff, including without limitation, all of the rights provided under the Loan Documents.

33.     There being no just reason for delay, the Court finds this is a final, appealable order.


**Dated: March 26, 2015**           **s/Robert H. Cleland**
                                     **UNITED STATES DISTRICT**
                                     **COURT JUDGE**

27